In the Matter of the Claim of PETER BERENOWSKI, Respondent, against ANCHOR WINDOW CLEANING COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 1, 1927.

**Workmen's compensation — award — claimant attended school for rehabilitation under Workmen's Compensation Law, § 15, subd. 9 — award during period of school attendance cannot be made on basis of no wage-earning capacity.**

An award for partial disability during a time when the claimant was in attendance upon a rehabilitation school, under subdivision 9 of section 15 of the Workmen's

Compensation Law, must take into consideration the earning capacity of the claimant. The mere fact that while he is in attendance at the school he is actually earning no money, does not justify the State Industrial Board in awarding him full compensation, regardless of his actual earning capacity during that time.

APPEAL by Anchor Window Cleaning Company and another from an award of the State Industrial Board, made on the 27th day of September, 1926.

*Jeremiah F. Connor,* for the appellants.

*Albert Ottinger, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the State Industrial Board.

HINMAN, J. One question only is stressed upon this appeal. It is to test whether a claimant who is only partially disabled by an industrial accident and has developed an earning capacity by actual employment, may be awarded full compensation without regard to his actual earning capacity, during the period while he is attending a training school to learn a trade suitable to his physical condition under the rehabilitation provision of the Workmen's Compensation Law. (Workmen's Compensation Law, § 15, subd. 9.) Claimant received injuries to his foot and his spine which totally disabled him for a time. Later he became able to do light work, not involving stooping or heavy lifting. Awards for partial disability were awarded to him upon the basis of ten dollars a week earning capacity. Upon that earning capacity he was entitled to receive compensation at the rate of fifteen dollars and seventy-seven cents per week. Awards at that reduced rate were made and paid to January 15, 1926.

The Board has found that " claimant continued to work at a reduced rate, which was fixed at fifteen dollars and seventy-seven cents, until January 15, 1926, on which date claimant entered a training school to which he was referred by the Bureau of Rehabilitation of the Department of Labor of the State of New York and the Department of Education of the State of New York, in order to learn the trade of welder, which trade was selected by said Bureau as being the most suitable for said claimant, so that he might at some future date establish an earning capacity comparable with his age, general health and previous earnings before the accident, and has continued in said training school to the date of the last award herein, to wit, February 5, 1926; during which period claimant has been partially disabled but with no earning capacity." Compensation for that period was awarded at the full rate of twenty dollars per week instead of at the previous reduced rate of fifteen dollars and seventy-seven cents on the ground that while he had

demonstrated an earning capacity and had been actually earning ten dollars a week, he could not continue to earn such wages while he was attending the training school.   Concededly the finding of the Board that claimant, during this period of training, was " partially disabled but with no earning capacity " is not a pure finding of fact but a mixed finding of law and fact.   The chairman of the Board has stated in her opinion: " I have held that although he was partially disabled he had no earning capacity during the period when he was in this training school as a disabled man."   The theory of the chairman and of the Board must have been that he continued to have the same capacity to earn wages (because any other finding would have been without evidence to support it) but that while he was attending school he had no opportunity to earn wages.   We think that is not the plan of the statute.

Under subdivision 9 of section 15 of the Workmen's Compensation Law, it was arranged by the Bureau of Rehabilitation that the claimant should receive vocational training at the Institute for Crippled and Disabled Men.   The Institute was paid thirty dollars per month by the bureau of rehabilitation and the same bureau allowed claimant five dollars a week while he was in training. for his carfare and incidental expenses.   Under said subdivision 9 of that section these expenses were payable out of a special fund created thereunder, the sum received being defined as " additional compensation."   His regular compensation for his partial disability, payable by the appellant employer and carrier, is two-thirds of the difference between his average weekly wages before the accident and his " wage earning capacity " thereafter.   (Workmen's Compensation Law, § 15, subd. 3, ¶ u; Id. subd. 5.)

Wage earning capacity is not necessarily the equivalent of actual earnings.   (*Mead* v. *Buffalo General Electric Co.*, 212 App. Div. 191.)   Neither can wage earning opportunity be considered the equivalent of " wage earning capacity."   In *Matter of Ahles* v. *Village of Catskill* (219 App. Div. 213) the claimant therein was prohibited by a rule of his employer from engaging in outside work. We held that so long as he remained with that employer under such rules his salary received from that employer did not necessarily measure his wage earning capacity.   We said that " his wage earning capacity is not presently diminished solely by reason of his injury, but is affected by the rules of his employer."   We have a somewhat similar situation in the instant case.   The wage earning capacity of the claimant herein is not deemed by the Board to have been lost by reason of his injury.   He has simply lost the opportunity for actual earnings during the period of his training.

The statute does not permit the Board's interpretation.   Whether

the employee is actually working or not makes no difference. The measure of the statute is his capacity to earn, not necessarily his actual earnings. That has been our uniform interpretation of the term " wage earning capacity " and there is no indication in the statute which points to a different interpretation in a case where vocational training is permitted for the purpose of increasing an employee's earning power. The benefit that may accrue to the employer and carrier in thus increasing his earning power is not contemplated by the statute. The legislative purpose was the rehabilitation of the injured employee. The expense of it is treated as " additional compensation " payable out of a special fund created for the purpose. The Board erred in requiring the employer and carrier to pay full compensation. The rate should be reduced to two-thirds of the difference between his average weekly wages at the time of the accident and his wage earning capacity during the period of the award.

The award should be reversed and the matter remitted, with costs against the State Industrial Board to abide the event.

COCHRANE, P. J., VAN KIRK, McCANN and DAVIS, JJ., concur.

Award reversed and claim remitted, with costs against the State Industrial Board to abide the event.