[675 NYS2d 164]

In the Matter of the Claim of THOMAS MEISNER, Appellant, v UNITED PARCEL SERVICE et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, June 18, 1998

**APPEARANCES OF COUNSEL**

*Sullivan Cunningham Keenan Mraz & Lemire,* Albany (*John M. Oliver* of counsel), for appellant.

*Walsh & Hacker*, Albany (*Peter J. Walsh* of counsel), for Liberty Mutual Insurance Company, respondent.

**OPINION OF THE COURT**

MIKOLL, J. P.

This appeal presents a novel question with respect to a claimant's entitlement to a reduced earnings award. Where a part-time employee sustains a compensable injury resulting in a mild permanent partial disability precluding resumption of his previous employment, but not otherwise limiting the number of hours he could work, is he to be denied a reduced earnings award where he obtains part-time employment at a lower hourly rate on the ground that his diminished earning capacity is "self-imposed"? We think not, and reverse the decision of the Workers' Compensation Board.

Claimant was employed on a part-time basis by United Parcel Service (hereinafter UPS). He worked 25 hours per week during peak season (the end of November through Christmas) and otherwise 20 hours per week at an hourly rate of $8.50.[1] He had been so employed for two years, and testified that he intended to continue in that position until he attained full-time status. On July 16, 1991, claimant injured his back while loading and unloading packages in the course of his employment. As a result of this injury, he stopped working on August 1, 1991 and filed a claim for workers' compensation benefits. From July 18, 1991 to December 3, 1991, claimant received a partial disability award of $111.47 per week, which was subsequently reduced to $27.87 per week for the period of December 3, 1991 to December 24, 1991.

On December 24, 1991, UPS' workers' compensation insurance carrier suspended payments and, following a challenge thereto by claimant, a Workers' Compensation Law Judge (hereinafter WCLJ) ordered payments continued at a temporary rate of $27.87. Claimant received these payments through March 11, 1993, at which time the carrier again ceased making payments. In 1993, claimant became employed for the first time since his injury, working 25 hours per week as a clerk in his father's business at the rate of $5 per hour. He testified that the hours and wages were set by his father and that he worked as many hours as were made available to him. Nothing in the record suggests that additional working hours were available to claimant.

---

1. Claimant testified that according to company policy, UPS gave annual increases of $0.55 per hour to part-time employees.

Claimant again challenged the carrier's cessation of payments and a hearing was held before a WCLJ, who found, based upon the testimony of claimant's treating physicians, that he had "a permanent partial disability, mild in degree, as a result of the compensable injury" and that he was entitled to a reduced earnings award for the period of his employment in his father's business. The WCLJ directed further submissions on the issue of claimant's earnings. On review, however, the Board modified the WCLJ's decision to the extent that it found no entitlement to reduced earnings after April 1993, determining that claimant voluntarily limited his wages. The Board based this finding upon testimony that while claimant was restricted from heavy lifting and was unable to return to his prior work at UPS, there were no restrictions on the number of hours he could work in his capacity as an office clerk in his father's business. Essentially, the Board concluded that claimant suffered no reduced earning capacity because by working more hours, albeit at a reduced rate, he could eventually attain his preinjury weekly earnings. Translating this finding into figures, if claimant had worked 25 hours per week at UPS and earned $212.50 (utilizing the 1991 wage of $8.50 per hour), he could earn the same sum by working 42.5 hours per week in his present employment.[2]

As a preliminary matter, we note that the Board's decision appears to have left intact the WCLJ's finding that claimant sustained a mild permanent partial disability and could not return to his prior work. Such a finding permits an inference of lost wages therefrom (*see, Matter of Yerry v New York State Workers' Compensation Bd.*, 93 AD2d 931, 932; *Matter of Miller v Pan Am. World Airways*, 46 AD2d 718; *Matter of Mazziotto v Brookfield Constr. Co.*, 40 AD2d 245, 247). Where, however, reduced earning capacity is due to age, general economic conditions or other factors unrelated to the disability, a reduced earnings award may properly be denied (*see, Matter of Dudlo v Polytherm Plastics*, 125 AD2d 792, 793; *Matter of Yerry v New York State Workers' Compensation Bd.*, supra; *Matter of Topf v American Character Doll & Toy Co.*, 62 AD2d 1111, 1112).

Workers' Compensation Law § 15 (3) (w) permits an award for reduced earnings in consequence of a permanent partial disability amounting to two thirds of the difference between a claimant's established weekly wage prior to the disability and

---

2. Taken to its logical conclusion, this finding would require a similarly situated full-time employee to work 68 hours per week to earn preinjury 40-hour work week wages.

"his wage earning capacity thereafter". Workers' Compensation Law § 15 (5-a) provides that "[t]he wage earning capacity of an injured employee in cases of partial disability shall be determined by his actual earnings". It is well settled that "where actual earnings during the period of the disability are established, wage earning capacity must be determined *exclusively by the actual earnings of the injured employee without evidence of capacity to earn more or less*" (*Matter of Matise v Munro Waterproofing Co.*, 293 NY 496, 500 [emphasis supplied]; *Matter of Savino v Pollack*, 33 AD2d 605, 606; *Matter of Santo v Symington Mach. Co.*, 237 App Div 242, 244).

While we are bound by those factual determinations of the Board supported by substantial evidence (*see, e.g., Matter of Gates v McBride Transp.*, 60 NY2d 670, 671; *Matter of Blanchard v Integrated Food Sys.*, 220 AD2d 895, 896), this principle does not constrain us here. As a threshold matter, there is simply no evidence in the record from which to conclude that claimant had the opportunity to work more than 25 hours per week or that his diminished earning capacity was "self-imposed". Moreover, we are of the view that even with such evidence, claimant would be entitled to a reduced earnings award pursuant to Workers' Compensation Law § 15 (5-a) and the case law construing that provision. Even in the absence of such controlling authority, a contrary result would be logically untenable and manifestly unfair (*see, Matter of Mangianeli v New York State Brooklyn State Hosp.*, 33 AD2d 1087; *cf., Matter of Pfeffer v Parkside Caterers*, 42 NY2d 59; *Matter of Mulpagano v Crucible Steel Co.*, 53 AD2d 930).

MERCURE, WHITE, SPAIN and CARPINELLO, JJ., concur.

Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.